IN THE UNITED STATES DISTRICT COURT
FOR THENORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DRIVE INTERMODAL LLC,<br>an Indiana Company<br><br>    Plaintiff,<br><br>    v.<br><br>ROBERT ROSE, ALEXANDRIA<br>ROSE, and CAPITOL TRUCKING INC.<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)   Case No. 23-cv-01880<br>)<br>)<br>)<br>)<br>) |

**FIRST AMENDED COMPLAINT**

Plaintiff DRIVE INTERMODAL LLC ("Drive Intermodal" or "Plaintiff") files this Complaint against Defendants ROBERT ROSE ("Robert"), ALEXANDRIA ROSE ("Alex") and CAPITOL TRUCKING INC. ("Capitol," and collectively, "Defendants") and states on knowledge, information, and belief, as follows:

**PARTIES**

1. PLAINTIFF is a logistics company registered in the State of Indiana with its principal place of business in Oak Brook, DuPage County, Illinois.

2. Robert is a citizen of the State of Illinois, residing at 25436 Faraday Road, Manhattan Illinois.

3. Alex is a citizen of the State of Illinois, residing at 25436 Faraday Road, Manhattan, Illinois.

4. For the entirety of 2022, Robert and Alex are and were married to each other.

5. Capitol is a is a trucking company incorporated in the State of Illinois with its principal place of business in Joliet, Illinois.

1

6. Venue is proper in state court pursuant to 750 ILCS 5/104.

**BACKGROUND AND RELEVANT FACTS**

7. PLAINTIFF is a logistics company offering numerous services including air freight, ocean freight, road freight, transloading, and supply chain solutions.

8. PLAINTIFF considers certain items to be confidential and in the nature of trade secrets, including but not limited to customer lists, customer preferences, services used by its customers, prices charged to customers, profit margins, sales data, specific information regarding customer relationships, and other financial information (collectively, "confidential customer information"). (Exhibit A)

9. PLAINTIFF deems its customer information confidential because it operates m a competitive environment.

10. PLAINTIFF derives significant economic value from its confidential customer information, which is not generally known either to the public or within PLAINTIFF's industry, and which also would provide economic value to PLAINTIFF's competitors.

11. PLAINTIFF seeks to maintain the secrecy of its confidential customer information because the fewer competitors who know its customers and call on them, the better position PLAINTIFF is in to make sales.

12. Similarly, because competitors often do not know which services a customer buys or uses or the pricing and other terms of those services, PLAINTIFF seeks to maintain the confidentiality of that information.

13. PLAINTIFF also seeks to keep pricing and profit margin information confidential

to keep competitors from underbidding it, and because PLAINTIFF prioritizes its largest customers and negotiates pricing based in part upon volume.

14. Among other steps to keep its customer information confidential, PLAINTIFF utilizes a password-protected intranet, locks its offices, and restricts access to customer data to those people who have a need to know certain information to do their jobs.

15. At all relevant times, PLAINTIFF maintained a Non-Disclosure policy that was distributed to all employees, including Roses, and informed employees that the protection of confidential business information and trade secrets is vital to the interests and success of PLAINTIFF. (Exhibit A)

16. The PLAINTIFF's Non-Disclosure policy states that employees who improperly use or disclose trade secrets or confidential business information will be subject to disciplinary action, up to and including termination of employment, even if they do not actually benefit from the disclosed information. (Exhibit A)

17. At all relevant times, PLAINTIFF also maintained a policy requiring immediate return of Company property upon request or upon termination of employment.

18. Beginning in November 2021, PLAINTIFF employed Robert in its Oak Brook, Illinois office.

19. Beginning July 7, 2021, Alex worked in operations and became General Manager of the office in June 2022.

20. Robert acknowledged that he received and understood that PLAINTIFF's policy prohibited all employees from removing any company files, documents, or information from the PLAINTIFF's office. (Exhibit B)

21. Alex acknowledged that she received and understood that PLAINTIFF's policy prohibited all employees from removing any company files, documents, or information from the PLAINTIFF's office. (Exhibit C)

22. As the General Manager, Alex was responsible for, among other things, ensuring that employees in the office complied with all Company policies, including policies regarding the confidentiality of Company files, documents, and information. (Exhibit D & Exhibit E)

23. In his role, Robert was provided access to confidential customer, driver, and independent contractor information.

24. In her role, Alex was provided access to confidential customer information.

25. In September 2022, Robert left the office to work for Capitol. (Exhibit F)

26. Alex continued to work for Plaintiff as an employee until October 7, 2022 and was paid a salary and other benefits and compensation. (Exhibit G)

27. Alex's job duties included developing new prospects and interacting with existing customers to increase sales of the Company's products and services.

28. In her role, Alex was provided access to confidential customer information.

29. Alex acknowledged her receipt and understanding of all PLAINTIFF policies and procedures. (Exhibit C)

30. Beginning no later than September 2022, unbeknownst to PLAINTIFF, Alex began diverting PLAINTIFF's work to Robert and Capitol. At the time of Robert's departure, Alex was prohibited to contact Robert in any business related dealings. (Exhibit H)

31. Beginning no later than September 2022, unbeknownst to PLAINTIFF, Alex began forwarding PLAINTIFF's confidential customer information to Robert and Capitol.

32. Alex unknown to PLAINTIFF was sending a specific customer's work to Robert and Capitol knowing PLAINTIFF's own equipment was idle causing severe economic hardship to PLAINTIFF and PLAINTIFF's independent contractors.

33. Alex unknown to PLAINTIFF was paying Robert and Capitol a large premium to handle PLAINTIFF's customer business.

34. Beginning no later than September 2022 Robert utilized the confidential business contacts he made to Capitol Trucking and was prohibited by Company policy from doing so. (Exhibit I & Exhibit A)

35. Alex had no legitimate business reason to divert PLAINTIFF's work to Robert and Capitol, and was prohibited by Company policy from doing so.

36. In anticipation of her resignation, Alex sought to ingratiate herself with PLAINTIFF's customers who she planned to solicit after her resignation including by diverting customers to Capitol.

37. In anticipation of her resignation, Alex actively recruited PLAINTIFF's employees while employed by PLAINTIFF attempting to divert them to Capitol.

38. After his resignation in September 2022, Robert surreptitiously entered PLAINTIFF'S cloud based file management system, multiple times up to October 4, 2022 and accessed a substantial number of Highly Confidential Company files from the office, in violation of Company policy. (Exhibit J)

39. The files accessed by Robert included information on –driver and independent contractors working for the PLAINTIFF. Those documents contain confidential information.

40. The files accessed by Robert included documents that included phone numbers, addresses, email addresses of all of the PLAINTIFF's drivers and contractors. Those documents

contain confidential information.

  41.  Before his resignation in September 2022, Robert also kept copies of files that included information on customers and pricing from meetings, and emails.

  42.  The files accessed by Robert included confidential customer information such as customer quotes and contact details, email exchanges with customers, proposals sent to customers, with details of shipments, revenues, costs, and profit margins.

  43.  Robert had no legitimate reason to access files after his termination including confidential customer information from the Company's premises.

  44.  Robert's actions in accessing the files were recorded by PLAINTIFF'S IT department and later reviewed by PLAINTIFF'S management when Robert and Alex's plan to misappropriate PLAINTIFF'S confidential independent contractor information became known. (Exhibit I)

  45.  Alex resigned from PLAINTIFF on October 7, 2022, and her last day of work was October 7, 2022. (Exhibit G)

  46.  Immediately after resigning from PLAINTIFF, Alex began working with Robert and for PLAINTIFF's competitor, Defendant Capitol.

  47.  As an employee for Capitol, Robert and Alex are employed in a substantially similar position to their position they held with PLAINTIFF.

  48.  Upon information and belief, Robert and Alex represented to Capitol that they could and would use his knowledge of PLAINTIFF's confidential customer information to solicit PLAINTIFF's customers on behalf of Capitol.

  49.  Using PLAINTIFF's confidential customer information, Robert and Alex began soliciting PLAINTIFF's employees and customers on behalf of Capitol in September 2022.

(Exhibit I)

50. For example, Alex, on behalf of Capitol, began to actively recruit PLAINTIFF's employee Yvette Martinez, Banesa Jaimez Garcia, Joana Gonzalez to work there. A l e x offered the employees additional pay based on their knowledge and/or possession of the PLAINTIFF's confidential information. (Exhibit D)

51. As a further example, Alex and/or Robert sent a quote on behalf of Capitol to a PLAINTIFF's customer Logistics Plus using the exact same format at PLAINTIFF. Because PLAINTIFF and Capitol have different pricing structures, Alex and/or Robert underbid PLAINTIFF based on her knowledge and/or possession of the PLAINTIFF's confidential information. (Exhibit K)

52. Upon learning of Alex's actions, PLAINTIFF incurred costs, including damage assessment and mitigation.

53. Upon learning of Alex and Robert's actions, PLAINTIFF sent a cease and desist letter to Alex and Robert via email and USPS on November 7, 2022, putting Alex and Robert on notice regarding his violations of law and misappropriation of the PLAINTIFF 's confidential customer information. (Exhibit L & Exhibit M)

54. The cease and desist letter directed Alex and Robert to stop using the confidential information and documents that they took from PLAINTIFF, return all electronic and other information, and to describe the circumstances regarding his use and disclosures of the Company's confidential customer information. (Exhibit L & Exhibit M)

55. Upon information and belief, Alex and Robert have retained confidential customer information.

56. Alex and Robert have used and is continuing to use PLAINTIFF's confidential customer information in their attempts to solicit PLAINTIFF customers and employees. The customers and independent contractors that were taken were unknown to Alex and Robert BEFORE being employed by PLAINTIFF.

57. Alex and Robert's employment by Capitol necessarily creates the likelihood of the inevitable disclosure of PLAINTIFF's confidential customer information. Alex and Robert cannot help but employ, in their new position with Capitol, which directly compete with PLAINTIFF's products and services, their knowledge of PLAINTIFF's confidential customer information. Even were Alex and Robert to agree not to disclose any of this information, such agreement would be completely ineffective, because the confidential information acquired by Alex and Robert during their employment by PLAINTIFF is exactly the type of information that any salesperson needs and must use to effectively compete for customers against PLAINTIFF and on behalf of a competitor such as Capitol.

58. By and through their unlawful use of PLAINTIFF's confidential customer and independent driver and contractor information in the two months immediately following the termination of their employment with PLAINTIFF, Alex and Robert has enticed multiple PLAINTIFF independent contractors and clients to Capitol. The PLAINTIFF customers and independent contractors enticed to leave PLAINTIFF by Roses' unlawful use of PLAINTIFF's confidential customer information collectively represent revenue in excess of one million dollars during 2022 and 2023.

59. PLAINTIFF put Capitol on notice of Alex and Robert's conduct, including their taking of PLAINTIFF's confidential customer information and his use of same for purposes of unfairly competing with PLAINTIFF on behalf of Capitol.

60. Capitol has used and is continuing to use PLAINTIFF's confidential customer information in order to gain an unfair competitive advantage.

61. Capitol has aided, abetted, and ratified Roses' conduct.

62. Capitol's employment of Roses further threatens to, and will inevitably result in, the disclosure of PLAINTIFF's confidential information.

## COUNT I: ILLINOIS TRADE SECRETS ACT

63. PLAINTIFF incorporates paragraphs 1 through 62 as if fully set forth herein.

64. Through Their ~~his~~ employment with PLAINTIFF, Alex and Robert had access to and knowledge of confidential customer information and trade secrets of PLAINTIFF.

65. PLAINTIFF derives economic value and competitive advantage from the fact that its confidential customer information is not known to its competitors, who could also derive economic value from its disclosure or use. Because of the value of this information, PLAINTIFF has undertaken reasonable measures to maintain its secrecy.

66. PLAINTIFF's confidential customer information constitutes "trade secrets" as defined by the Illinois Trade Secrets Act, 765 ILCS 1065/2, as well as under Illinois common law.

67. Alex, Robert, and Capitol misappropriated PLAINTIFF's trade secrets and used and/or disclosed that information to gain unfair competitive advantage. Defendants' actions constitute willful, malicious, and/or reckless violations and threatened violations of the Illinois Trade Secrets Act, 765 ILCS 1065/1 et seq.

68. As a result of Defendants' misappropriation of PLAINTIFF's trade secrets, PLAINTIFF has suffered damages in an amount to be determined at trial, including exemplary damages pursuant to 765 ILCS 1065/4(b).

69. As a result of Defendants' intentional and wrongful conduct, PLAINTIFF has been injured, for which it is entitled to preliminary and permanent injunctive relief and monetary damages against Alex and Capitol together with punitive damages, attorneys' fees, and costs in an amount to be determined by a jury at trial.

### COUNT II: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

70. PLAINTIFF incorporates paragraphs 1 through 62 as if fully set forth herein.

71. PLAINTIFF has existing business relationships with its customers and prospective customers years before Alex and Robert were employed.

72. Alex, Robert, and Capitol Global are aware of PLAINTIFF's business relationships and the identities of its customers and prospective customers.

73. By their actions, Defendants have knowingly and intentionally interfered with PLAINTIFF's business relationships with multiple customers of PLAINTIFF using improper means and improper motives in an attempt to cause those relationships to terminate, in violation of Illinois law.

74. PLAINTIFF has been damaged as a result of Defendants' interference with its business relationships, including but not limited to lost profits and loss of goodwill, for which PLAINTIFF is entitled to recover actual and punitive damages.

### COUNT III: UNFAIR COMPETITION

75. PLAINTIFF incorporates paragraphs 1 through 62 as if fully set forth herein.

**ANSWER:**

76. By their actions, Alex, Robert, and Capitol have engaged in unfair competition in violation of Illinois law by engaging in tortious conduct that has deprived PLAINTIFF of customers and of particular sales to its customers and prospective customers.

77. As a direct and proximate result of unfair competition in which Defendants have engaged in violation of Illinois law, PLAINTIFF has suffered and will continue to suffer severe and irreparable harm, for which PLAINTIFF is entitled to injunctive relief, as well as damages to help PLAINTIFF recover as much of its economic injuries as can be calculated.

## COUNT IV: COMPUTER FRAUD ACT

78. PLAINTIFF incorporates paragraphs 1 through 62 as if fully set forth herein.

79. By accessing PLAINTIFF' computers, intranet, and email system with intent to make improper use of the confidential customer information he obtained, Robert's conduct violated 720 ILCS 5/17-50.

80. Robert's conduct caused a loss to PLAINTIFF of at least $500,000, including costs related to damage assessment and mitigation.

81. PLAINTIFF is entitled to recover its economic damages pursuant to 720 ILCS 5/17-50.

## COUNT V: BREACH OF DUTY OF LOYALTY

### (Against Alex)

82. PLAINTIFF incorporates paragraphs 1 through 61 as if fully set forth herein.

83. In the course and scope of his employment, PLAINTIFF entrusted Alex with its confidential customer information.

84. Alex owed PLAINTIFF a duty of loyalty to refrain from using or disclosing

PLAINTIFF's confidential customer information.

85. Alex breached her duty of loyalty to PLAINTIFF during her employment by taking PLAINTIFF' confidential customer information for the benefit of Robert and Capitol.

86. Alex breached her duty of loyalty to PLAINTIFF during her employment by recruiting PLAINTIFF's employees for Capitol while employed by PLAINTIFF.

87. In addition, since the termination of her employment, Roses has breached his duty of loyalty to PLAINTIFF by wrongfully using and disclosing PLAINTIFF's confidential customer information to Robert and Capitol.

88. Alex's conduct has undermined PLAINTIFF's ability to conduct its business.

89. As a result of Alex's breach of her duty of loyalty, PLAINTIFF has suffered damages in an amount to be determined at trial.

## COUNT VI: UNJUST ENRICHMENT

90. PLAINTIFF incorporates paragraphs 1 through 62 as if fully set forth herein.

91. Defendants have been enriched as a result of using PLAINTIFF's trade secrets and confidential customer information.

92. There is no justification for permitting Defendants to unjustly enrich themselves at PLAINTIFF's expense.

93. Equity demands that Defendants not be permitted to unjustly enrichment themselves.

WHEREFORE, PLAINTIFF DRIVE INTERMODAL, prays that the Court:

    a.    Issue a restraining order, temporary and permanent injunction that enjoins Capitol from employing Alex and Robert in any role substantially similar to their roles with PLAINTIFF, and enjoining Alex and Robert from having any further personal, verbal, or written contact with any client or customer of PLAINTIFF with whom Alex and Robert had contact during their employment with PLAINTIFF;

    b.    Order Alex and Robert to provide a list of all customers of PLAINTIFF, including any employees, agents, or representatives of such customers, with whom they had any contact since his employment with PLAINTIFF ended, including (i) a description of the date, time, nature, and substance of each contact; and (ii) the name of the person or persons with whom each contact occurred. Alex and Robert should also be ordered to provide a description of any information about PLAINTIFF that they have shared with anyone since their employment with PLAINTIFF ended, as well as the gross dollar value of all orders placed with Capitol by any person or entity with whom Alex and Robert shared information about PLAINTIFF;

    c.    Enter judgment in favor of Plaintiff against Capitol, Alex and Robert on its claims for misappropriation of trade secrets, tortious interference with business relations, unfair competition, and unjust enrichment, and against Roses on Plaintiffs claims for violation of the Computer Fraud and Abuse Act and for breach of duty of loyalty;

    d.    Grant to Plaintiff actual, treble, compensatory, and consequential damages;

    e.    Order Defendants to pay Plaintiffs attorneys' fees and expenses incurred in pursuing this lawsuit; and

f. Award any and all other relief to Plaintiff that this Court may deem necessary and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury as to all claims brought in this action.

Respectfully submitted,

DRIVE INTERMODAL, Plaintiff

By: /s/ Syed E. Ahmad

Syed E. Ahmad, #6294817
SA Law and Consulting LLC
411 Hamilton Blvd., Suite 1720
Peoria, IL 61602
(309) 643-0310
syed@salcfirm.com
areej@salcfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on March 29, 2023, I electronically filed the foregoing with the Clerk of the Court via the CM/ECF System which will send notification of such filing to those registered to receive electronic notices via email transmission at the email addresses provided by them, and also sent a copy to Defendant's counsel at the address stated below, via electronic mail and U.S. Mail on March 29, 2023:

Christopher S. Griesmeyer
GREIMAN, ROME & GRIESMEYER, LLC
205 West Randolph Street, Suite 2300
Chicago, Illinois 60602
cgriesmeyer@grglegal.com

By: s/ Syed E. Ahmad
One of Plaintiff's Attorneys